James ELLETT, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–196.

Supreme Court of Wyoming.

Oct. 10, 1994.

James Ellett, pro se.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., and Lori L. Gorseth, Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

CARDINE, Justice, Retired.

Appellant, James Ellett (Ellett), pursuant to W.R.Cr.P. 35, moved the district court to correct his sentence entered after a guilty plea for one count of indecent liberties. Ellett claimed that his sentence was illegal because it violated his plea agreement which recommended him for the Wyoming Youthful Offender Program and because it violated the doctrines of equal protection and the separation of powers. The district court denied Ellett's motion, and he appeals that denial.

We affirm.

Ellett raises three issues, which he phrases as arguments:

I.   Violation of the plea agreement by the State, thus increasing appellant's sentence beyond that provided for in the plea agreement and contemplated by the court, in violation of the due process provisions of the Wyoming and United States Constitutions.

II.   W.S. §§ 7–13–1001 through 1003, and the sentencing order thereunder, delegates determination of the appellant's sentence to the warden of the state prison in violation of W.S. § 6–10–104, the separation of powers provisions of the Wyoming Constitution and the due process provisions of the Wyoming and United States Constitutions.

III.   Appellant's denial for participation in the Youthful Offender Program due to a medical injury, [violates] the equal protection clause of the Wyoming and United States Constitutions.

On December 16, 1991, Ellett pled guilty to one count of indecent liberties and was sentenced to a minimum of four years and a maximum of five years in the state penitentiary. Additionally, the district judge recommended that Ellett be sent to the Wyoming Conservation Camp. The Wyoming Conservation Camp (hereinafter Boot Camp) involves intense physical labor, and is a part of the Youthful Offender Program. The Youthful Offender Program Act gives a sentencing court discretion to reduce certain youthful offenders' sentences after they have completed the program. W.S. 7–13–1002 (Cum. Supp.1993).

After Ellett arrived at the state penitentiary in late December of 1991, it was determined, during a routine physical, that he suffered a physical impairment which would cause difficulty in his being in the Boot Camp program. Due to Ellett's condition, the warden denied his entry into the Boot Camp/Youthful Offender Program.

On August 17, 1993, one year and eight months after entering his plea, Ellett filed a motion to correct his sentence, alleging that his plea agreement had been violated and that the refusal to allow him to enter Boot Camp violated equal protection of law.

### DISCUSSION

Rule 35, W.R.Cr.P., provides:

(a) *Correction.*—The court may correct an illegal sentence at any time. Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.

(b) *Reduction.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, *within one year* after the sentence is imposed or probation is revoked, or within one year

* Retired July 6, 1994.

after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect ·of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

(Emphasis added.) The district court is entitled to considerable discretion in deciding motions brought under W.R.Cr.P. 35, and this court will not disturb those decisions absent proof of a clear abuse of discretion. *Asch v. State,* 784 P.2d 235, 237 (Wyo.1989); *see also Fortin v. State,* 622 P.2d 418, 420 (Wyo.1981). The scope of review under Rule 35(a) of the Federal Rules of Criminal Procedure has been narrowly construed. In *Hill v. United States,* 368 U.S. 424, 82 S:Ct. 468, 7 L.Ed.2d 417 (1962), the Court held:

> [T]he narrow function of Rule 35 is to permit correction at any time of an illegal *sentence,* not to re-examine errors occurring at the trial or other proceedings prior to the imposition of the sentence.

368 U.S. at 430, 82 S.Ct. at 472 (emphasis in original). Concerning what constitutes an "illegal sentence," that Court wrote:

> The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect.

*Id.* Under the Wyoming Rules of Criminal Procedure, a Rule 35(a) motion may be brought at any time to correct an "illegal sentence," for example, a sentence which exceeds the statutory limits, a sentence which imposes multiple terms for the same offense, or a sentence whose terms violate a constitution or law. *Id.* However, a motion brought under Rule 35(a) and (b) to "correct, reduce, or modify a sentence" must be brought within one year after sentence is imposed.

■ Ellett first claims that his sentence was illegal because the State violated a plea agreement made with him by breaching promises contained in the agreement and that his plea was involuntary because he accepted the plea agreement based on these alleged false promises. He claims that he understood the plea agreement provided: a four to five year sentence be suspended and that he enter the Youthful Offenders Program in lieu of that sentence. In addition, he asserts that the State failed to tell him that he could be denied entrance into the Youthful Offenders Program for medical reasons.

The error alleged by Ellett does not fall within the narrow definition of "illegal sentences" as defined by the United States Supreme Court in *Hill.* Rather, if it was a legal sentence imposed in violation of a plea agreement, it falls within the category of sentences imposed in an illegal manner and, as such, may not be collaterally attacked under the guise of Rule 35(a). *United States v. Doby,* 652 F.Supp. 335, 337 (N.D.Ind.1987), *see also* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 585 at 398 (1982). The claim that the sentence violated the plea agreement is not a claim of an "illegal sentence."

■ We note also that the motion to correct or modify was required to be brought within one year. W.R.Cr.P. 35(b). Ellett did not file his motion within one year after sentencing. Therefore, the court correctly denied the motion on this ground also.

■ Finally, the transcript of Ellett's plea hearing belies his argument. Neither the district court nor the prosecutor promised Ellett a suspended sentence nor did they promise automatic entrance into the Youthful Offenders Program. Instead, the record reflects just the opposite. When Ellett entered his plea, the following discussion occurred:

> [PROSECUTOR]: Yes, Your Honor. I believe what we are talking about here [is] a minimum four years, five years maximum, in the state penitentiary, *with a recommendation to Boot Camp,* and just so the defendant realizes if he successfully completes the Boot Camp Program, he will be looking at some program at C.S.C. or

some program after that, probably. It depends upon his performance.

THE COURT: *Do you understand what we are talking about Mr. Ellett?*

MR. ELLETT: *Yes, sir.*

\* \* \* \* \* \*

[THE COURT]: Mr. Ellett, *I must tell you, and I am sure [defense counsel] has told you this, too, that I have no authority to order you to be placed in Boot Camp. I only make a recommendation that you be placed in Boot Camp. The placement in Boot Camp is strictly up to the warden of the State Penitentiary,* and it depends on how you behave, how your reports are \* \* \*. *Do you understand that?*

MR. ELLETT: *Yes, sir.*

(Emphasis added.) The above excerpt reveals that the district court, the prosecutor and Ellett all understood that Ellett's placement in the Youthful Offender Program was a recommendation only. There is nothing in the record evidencing a promise of Ellett's placement in the Youthful Offender Program. Ellett was plainly informed that the warden, solely, controlled his entry into the Youthful Offender Program.

■ Ellett correctly states that a guilty plea is void when it is induced by promises which deprive it of its voluntariness. *See Hanson v. State*, 590 P.2d 832, 835 (Wyo. 1979). However, as the district court correctly concluded, Ellett's plea was not induced by false promises; and Ellett was clearly informed about the terms and conditions of the plea agreement. *See generally York v. State*, 619 P.2d 391, 396–97 (Wyo. 1980).

As his second argument, Ellett asserts that the statutes creating the Youthful Offender Program violate the separation of powers provision of the Wyoming Constitution and violate the Due Process provisions of the Wyoming and the federal constitutions; therefore, he argues, his sentence was illegal. He asserts that the warden is improperly granted sentencing authority because the warden can determine whether Ellett will serve his four-to-five-year sentence or instead will serve six months in the Youthful Offender Program.

■ In 1988, the Legislature enacted W.S. 7–13–1001 through –1003 authorizing the Department of Corrections (formerly the Board of Charities and Reform and, hereinafter the department) to create a youthful offender program. 1988 Wyo.Sess.Laws ch. 68 § 1. Wyoming Statute 7–13–1003 provides:

(a) The department shall adopt reasonable rules and regulations to establish a youthful offender program for inmates incarcerated in a state penal institution.

(b) In addition to any other eligibility requirements adopted by the department, an inmate is eligible for placement in the youthful offender program only if he:

(i) Is serving a sentence of imprisonment at a state penal institution for any offense other than a felony punishable by death or life imprisonment;

(ii) has not attained the age of twenty-five (25) years;

(iii) Has not previously served a term of incarceration at any state or federal adult penal institution.

(c) The program created by the department shall include:

(i) Separation of program participants from the general inmate population;

(ii) Emphasis upon work and physical activity as a major element of the program.

(d) Participation by an inmate in the youthful offender program is a matter of grace and not of right. Approval of an inmate's participation in the program may be revoked by the department at any time if the inmate fails to comply with program requirements. The inmate shall not have any right to appeal the denial of his participation in the program.

Wyoming Statute 7–13–1002 (Cum.Supp. 1993) provides:

(a) The sentencing court may reduce the sentence of any convicted felon who:

(i) Is certified by the department as having successfully completed the youthful offender program under W.S. 7–13–1003; and

(ii) Makes application to the court within one (1) year after the individual began serving a sentence of incarceration at a state penal institution.

■ Article 2 § 1 of the Wyoming Constitution forbids each of the three branches of state government from exercising powers which belong to other branches. The judiciary has exclusive authority to determine the penalty for a specific crime as long as it is within the limits set by the legislature. *Hicklin v. State*, 535 P.2d 743, 754 (Wyo. 1975).

Sentencing authority remains always with the district court. The Youthful Offender Program Act grants authority to the district court to reduce a sentence after completion of the program. W.S. 7–13–1002(a). Once an inmate qualifies for the program and is admitted into the program, he is not guaranteed a reduced sentence. Instead, when an inmate is admitted to and successfully completes the program, the district court has discretion to reduce the inmate's sentence or to decline any sentence reduction. *Id.* The Youthful Offender Program Act does not authorize the warden to sentence or alter a sentence. Therefore, the Act does not violate the separation of powers provision in the Wyoming Constitution.

Ellett claims that the Youthful Offender Program statutes violate due process. He has failed to cite any authority in support of that argument and has failed to explain how those statutes violate due process. The question presented is not cogently argued, and we decline to address that issue. *Davis v. State*, 859 P.2d 89, 94 (Wyo.1993).

In his final claim, Ellett argues that he was denied equal protection under the law when he was denied the opportunity to participate in the Youthful Offender Program because of his injured knee. He asserts that the State, by denying him access to the Youthful Offender Program based on his medical condition, is unfairly discriminating because they are singling out those who are physically handicapped.

■ In determining whether the State is violating the equal protection doctrine, we require the party claiming such violation to first demonstrate that the classification at issue "treats similarly situated persons unequally." *Matter of ALJ*, 836 P.2d 307, 313 (Wyo.1992). If we determine that the classification does "treat similarly situated persons unequally," we apply two different levels of scrutiny depending upon the nature of the classification to determine whether equal protection is violated.

That is, where a statute [or a governmental action] affects a fundamental interest or creates an inherently suspect classification, the court must strictly scrutinize that statute [or the governmental action] to determine if it is necessary to achieve a compelling state interest. However, if the statute [or the governmental action] only affects ordinary interests in the economic and social welfare area, the court need only determine that it is rationally related to a legitimate state objective.

*White v. State*, 784 P.2d 1313, 1315 (Wyo. 1989).

In this case, Ellett is claiming that he and other youthful offenders are similarly situated and that he is being treated unequally as compared to other youthful offenders. In *Matter of ALJ*, we held that juveniles sentenced to probation and adults sentenced to probation are not similarly situated because the statutes treat juvenile offenders and adult offenders in separate criminal codes. 836 P.2d at 313. That is not the case here. Ellett, like other youthful offenders eligible for the program, is under twenty-five years old, has not previously served time in a state or federal adult penal institution, and he is not serving a sentence for a conviction punishable by death or life imprisonment. *See* W.S. 7–13–1003(b) (Cum.Supp.1993). However, he is being treated differently in that he has been denied entrance into the Youthful Offenders Program because of his injured leg. Hence, Ellett has demonstrated that the classification at issue—physical ailment and no physical ailment—treats similarly situated persons—convicted criminals statutorily eligible for the Youthful Offender Program—differently.

■ Ellett asserts that the warden's refusal to place him in the Youthful Offender

Program because of his injury involves a suspect class, *i.e.*, the physically disabled, and, therefore, strict scrutiny of the warden's action is required. He does not, however, assert that the warden's action involves a fundamental interest. Ellett cites W.S. 35–13–201 (1988) for the proposition that the physically handicapped are a suspect class. Wyoming Statute 35–13–201 provides, in part:

> (a) Any blind, visually handicapped, deaf, hearing impaired or otherwise disabled person, subject to the conditions and limitations established by law and applicable alike to all persons:
>
> > (i) Has the same right as an able-bodied person to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities and other public places;
> >
> > (ii) Shall be afforded full and equal accommodations, advantages, facilities and privileges of all hotels, motels, lodging places, restaurants, public elevators, places of public accommodation, amusement or resort and other places to which the general public is invited; and
> >
> > (iii) Shall not be discriminated against in the leasing or rental of apartments and other private residential property because of his handicap.

This statute does not accord the physically disabled status as a suspect class. The statute does, however, demonstrate that the Wyoming Legislature recognized a need to prevent discrimination against disabled persons.

According to the United States Supreme Court,

> the traditional indicia of suspectness [require] the class [to be] saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the United States Supreme Court held that mental retardation is not a "quasi-suspect classification" which necessitates heightened scrutiny because state and federal government have legislatively responded to the "plight of the mentally retarded" which "negates any claim that the mentally retarded are politically powerless[.]" *Id.*, at 473 U.S. at 443–46, 105 S.Ct. at 3256–57. Ellett has failed to demonstrate that this classification—physically injured youthful offenders—is politically powerless or has been traditionally subjected to "purposeful unequal treatment." Therefore, we cannot conclude that a suspect classification is involved and need only determine whether the warden's classification is rationally related to some legitimate governmental interest.

The State asserts that the purpose of the Youthful Offender Program is to provide "a highly structured and disciplined environment, emphasizing work and other physical activity * * * in lieu of long-term incarceration." The warden's denial of placement in the Youthful Offender Program to Ellett because of his injury is rationally related to the State's legitimate interest in providing a highly disciplined and physically laborious alternative to long-term incarceration for youthful offenders. Therefore, we hold that Ellett failed to demonstrate that his guaranteed right of equal protection under the laws has been violated.

We affirm the district court's denial of Ellett's motion to correct his sentence because Ellett's plea agreement claim was not an illegal sentence under Rule 35(a) and because Ellett failed to prove that his sentence violated his constitutional rights.